**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *Plaintiff,* | ) | |
| -vs- | ) | Case No. CR-25-313-G |
| COREY MICHAEL JONES, | ) | |
| *Defendant.* | ) | |

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

Corey Michael Jones, through counsel Luci Pérez, submits this sentencing memorandum to highlight and supplement information in the Presentence Investigation Report (hereinafter "PSR"), in support of a sentence below the advisory guideline range, as sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).[1]

## I. Nature and Circumstances of the Offense

On April 14th, 2025, officers at the Newcastle Casino in Newcastle, Oklahoma conducted a premise check and noticed a glass smoking device in plain view in a Hyundai vehicle. (PSR ¶ 14). The Chickasaw Nation Lighthouse Police Department conducted an open-air sniff around a vehicle with a K9 officer. *Id.* Officers determined the Hyundai vehicle was registered to Mr. Jones. (PSR ¶ 14). Officers made contact with Mr. Jones outside the casino, and they detained him while a search of the vehicle was conducted. The

[1] Oklahoma City University law student intern Hanna Hart contributed to the preparation of this sentencing memorandum.

search produced a glass smoking device, one gallon bag containing methamphetamine with an approximate weight of 60 grams, a 9mm handgun with a loaded magazine, drug paraphernalia, and three bundles of methamphetamine with an approximate total weight of 86.06 grams. (PSR ¶ 16). He was then arrested and transported to Grady County Jail.

Mr. Jones knowingly possessed a firearm, specifically a SCCY Industries model CPX-2 9mm caliber pistol (serial number 877697), which had previously crossed state lines to reach Oklahoma, and he knew that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. Mr. Jones, according to Count 2, knowingly and intentionally possessed, with the intent to distribute, a mixture or substance containing detectable amounts of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

Mr. Jones's advisory guideline range is 92 to 115 months, as calculated by the probation office. (PSR ¶ 120). He has taken accountability for his conduct and submits that a downward variance is appropriate in this case.

## II. History and Characteristics of Mr. Jones

Mr. Jones was born in Duncan, Oklahoma, to Gary Jones and Paula Jones. (PSR ¶ 90). He grew up in a split household after 1998, when his parents divorced. Mr. Jones had many difficulties with his behavior and understanding the consequences of his actions during his childhood, which resulted in his parents "giving up on him." *Id*. Although Mr. Jones now has a good relationship with his father, his father was the only disciplinarian during his childhood, and he states that his father would, as a result, "whoop" him. (PSR ¶ 93). Mr. Jones had no parental oversight in his home; after school, he would be out till late

hours of the night before returning home, which resulted in Mr. Jones getting into trouble with his friends and beginning to use drugs. (PSR ¶ 94).

Mr. Jones is a father. He has two biological daughters and a stepdaughter that he treats as his own. He is motivated now more than ever to get his life back on track and be a law-abiding citizen. One of his daughters is homeless and has had struggles with drug addiction. Its one thing for him to be in trouble but to know that one of his children is struggling and he is not able to help her is gut-wrenching for him. He is an imperfect man and has made many mistakes, but he loves his children and wants the opportunity to be there for them and help them navigate their struggles.

Mr. Jones believed that he had changed the course of his life in prison; however, he ended up in the current situation by trying to help out his daughter Kaitlyn, who was experiencing struggles related to her health, including seizures and mental health issues. He attempted to help take care of his daughter because she could not stay at her mother's house due to the noise and the number of people there, which created complications for her seizures. (PSR ¶ 97). Mr. Jones feared he wasn't making enough money and therefore felt like Ihe had to do something to help care for his daughter, which led to the current offense. (PSR ¶ 97).

## III. A sentence below the guideline range supports the need for the sentence imposed to reflect the seriousness of the offense, the need to promote respect for the law, and the need to provide just punishment for the offense: 18 U.S.C. § 3553(a)(2)(A)-(C).

Under 18 U.S.C. § 3553(a)(2)(A), "the court, in determining the particular sentence to be imposed, shall consider the need for the sentence imposed to reflect the seriousness

of the offense, promote respect for the law, and to provide just punishment for the offense." The seriousness of the offense and the need to promote respect for the law can still be addressed by a sentence less than the low end of the advisory guideline range.

Any sentence of incarceration wherein a person's liberty is taken from them would always reflect the seriousness of the offense, promote respect for the law and provide just punishment. Furthermore, there is no limitation placed on the information this Court can consider in imposing the sentence regarding Mr. Jones's background, character, and conduct, as long as the information is reliable. 18 U.S.C. § 3661.

The National Survey on Drug Use and Health (NSDUH), conducts an annual study with the Substance Abuse and Mental Health Services Administration (SAMHSA), to accumulate national-representative-data on use of tobacco, alcohol, illicit drugs and substance use disorders (SUDs); according to the national study, in 2021, 46.3 million people age 12 or older had a substance use disorder (SUD) in the past year, 24.0 million of which had a drug use disorder.[2] Approximately half of the people who struggle with a serious psychiatric illness also have a substance abuse disorder.[3]

---

[2] Substance Abuse and Mental Health Services Administration. (2022). *Key substance uses and mental health indicators in the United States: Results from the 2021 National Survey on Drug Use and Health* (HHS Publication No. PEP22-07-01-005, NSDUH Series H-57). Center for Behavioral Health Statistics and Quality, Substance Abuse and Mental Health Services Administration. https://www.samhsa.gov/data/report/2021-nsduh-annual-national-report

[3] "Substance Use Disorder and Mental Illness Often Go Hand in Hand. Both Must Be Addressed." Columbia University Department of Psychiatry, https://www.columbiapsychiatry.org/news/mental-health-and-substance-use-disorders-often-go-hand-hand-both-must-be-addressed. (Accessed 18 June 2026).

Dr. Marcus Ibrahim, M.D., at Sanford Aberdeen Clinic, wrote about the brain of someone dealing with depression and substance use. There is a dopamine surge that comes along with the use of substances, and when someone with depression uses such substances, their mental health can worsen when that surge dissipates.[4] When someone is simultaneously dealing with mental health disorders, substance abuse complicates, and can even worsen, the healing process for the individuals suffering and the lives close to the individual struggling.[5] Drugs affect the way an individual's brain cells work and function; therefore, drug use can lead to several neurological and behavioral conditions.[6] Substance abuse is more common in those dealing with major depressive disorders, anxiety, and other mood disorders, including disorders such as bipolar disorder.[7] Many factors can make a person more susceptible to substance abuse, including genetic factors, family history, traumatic events, and socioeconomic status.[8] Individuals who suffer from mental illness are at a higher risk of developing a SUD compared to those without mental health disorders, just like they are particularly vulnerable to developing other chronic diseases.[9]

***Mental Health***

---

[4] Mick Garry, "Why Substance Use Can Worsen Mental Health." Sanford Health News, Sanford Health, https://news.sanfordhealth.org/behavioral-health/why-substance-use-can-worsen-mental-health/. (Accessed 18 June 2026).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] "Co-Occurring Disorders and Other Health Conditions." (22 December 2025). https://www.samhsa.gov/substance-use/treatment/co-occurring-disorders (Accessed June 18, 2026).

Mr. Jones has suffered from a long history of mental illness and corresponding substance abuse. He reported first attempting suicide, by self-harming, at the age of 16 years old, for which he was subsequently hospitalized, and after a month, transferred to outpatient services in Oklahoma City. (PSR ¶ 101). Mr. Jones has been diagnosed with bipolar disorder, social anxiety disorder, and manic-depressive disorder. *Id*. He was prescribed medications to address each of these conditions, however, Mr. Jones experienced negative side effects and has been inconsistent with medication. (PSR ¶¶ 101-102). Unfortunately, Mr. Jones has experienced many highs and lows with his mental health throughout his life; independent of the isolated suicide attempt, he has also experienced repeated suicidal ideations, although he does not currently have any plans or further attempts. (PSR ¶ 102-103).

***Substance Abuse***

Mr. Jones has also suffered from problems with substance abuse since he was a teenager. Although he has been sober from alcohol for ten years, he stated he only used to drink socially and did not drink excessively. (PSR ¶ 104). Mr. Jones substance use started in 1992 at the age of 14 with Marijuana and escalated to Methamphetamine around 1996; he continued to use Marijuana occasionally, but his methamphetamine use was daily up until his arrest in October 2025. There was other drug use that occurred occasionally during his young adulthood. This reflects his continuous struggle with substance abuse issues for the last 30 years (PSR ¶ 105).

Mr. Jones first sought drug treatment and counseling in 2007/08 at Norman Alcohol Drug and Treatment Center. Later, he also completed the Cleveland County Drug Court

program from March 2015 to July 2016. (PSR ¶ 106). He also completed a Substance Abuse Treatment Program through the Oklahoma Department of Corrections in December 2024. (PSR ¶ 107). In the continuing year, 2025, he was living in a sober living house in Oklahoma City and participating in AA. (PSR ¶ 108).

Mr. Jones deeply wants and needs to participate in an intensive drug abuse program and requests the Residential Drug Abuse Program. If he is eligible, he is willing and able to participate in substance abuse treatment and mental health treatment available to him through the Federal Bureau of Prisons. He is eager to work on his sobriety and be able to receive adequate treatment for his mental health conditions to be a more successful member of society upon release. The need to promote respect for the law and to provide just punishment can be accomplished through a sentence below the guideline range. Mr. Jones will greatly benefit from the treatment he will undergo while in custody and then with the probation office upon release. Access to resources and structure will fortify Mr. Jones's sobriety and health and reduce the opportunity for recidivism.

## IV. General and Specific Deterrence

The most significant deterrents for Mr. Jones are his age, the strong desire to avoid recidivism, and caring for his daughter. Mr. Jones acknowledges his history of possessing drugs and his own problems with addiction, and he is dedicated to avoiding drugs at all costs going forward. While Mr. Jones's battle with addiction has been lifelong and oftentimes the precipitator to criminal conduct, he has maintained his sobriety while in custody and is determined to remain sober.

Additionally, even if the Court imposes a sentence below the guideline range, Mr. Jones will be in his fifties upon release. Furthermore, the Court will impose a term of supervised release of not less than three years. This is an added layer of punishment for Mr. Jones.

The looming prison sentence provides deterrence for Mr. Jones and certainly general deterrence is accounted for in the harsh guidelines for drug offenses. Accordingly, this Court need not incarcerate Mr. Jones to a term within the guidelines to reflect deterrence and protection for the public.

## CONCLUSION

For all the reasons stated above, a sentence substantially below the advisory guideline range is sufficient but not greater than necessary to comply with the statutory directives of 18 U.S.C. § 3553(a).

Respectfully Submitted,

Luci Pérez, OBA No. 35928
Assistant Federal Public Defender
Office of the Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405-609-5930
Facsimile: 405-609-5932
Electronic Mail: Luciana_perez@fd.org
Counsel for Mr. Jones

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic filing to Tiffany Edgmon, Assistant United States Attorney.

Luci Pérez